IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PAUL SAMUEL JOHNSON,

        Petitioner,

    v.

STEVE FREITAS, Sonoma County Sheriff,

        Respondent

No. C 11-6688 CW (PR)

ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS; DENYING MOTION FOR EVIDENTIARY HEARING; DENYING CERTIFICATE OF APPEALABILITY

Doc. no. 54

> Petitioner Paul Samuel Johnson, a state prisoner proceeding pro se, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his state criminal conviction, in which he asserts two cognizable claims: (1) the improper admission of an uncharged incident violated his due process rights; and (2) insufficient evidence supported his conviction.[1]  Respondent has filed an answer and a memorandum of points and authorities in support thereof and Petitioner has filed a traverse.  Petitioner moves for an evidentiary hearing.  Doc. no. 54.  For the reasons discussed below, the Court DENIES the petition, the motion for an evidentiary hearing and a certificate of appealability.

BACKGROUND

I. Procedural History

> On October 9, 2009, a Sonoma County jury convicted Petitioner of threatening a public official.  Clerk's Transcript (CT) at 185,

---

[1] Petitioner asserted a third claim, which the Court previously dismissed as noncognizable on federal habeas review. See Doc. no. 25

**United States District Court**
For the Northern District of California

187.  In a bifurcated proceeding, the jury found that Petitioner had served a prior prison term.  CT at 187.  On November 10, 2009, the trial court sentenced Petitioner to three years in state prison.  CT at 252-53.  On June 22, 2010, Petitioner filed an appeal in the California Court of Appeal raising the two claims he asserts in this petition.  The Court of Appeal, in a written order, affirmed the conviction.  Ex. 9; People v. Johnson, 2010 WL 4656948 (Cal. Ct. App. Nov. 18, 2010)(unpublished).  The California Supreme Court summarily denied review on January 26, 2011.  Exs. 10 and 11.  Petitioner filed seven petitions for a writ of habeas corpus in the California Supreme Court, all of which were summarily denied.  Exs. 12-25.

On March 19, 2013, this Court denied Respondent's motion to dismiss for failure to exhaust and dismissed Petitioner's Claim 3 as not cognizable on federal habeas review.  Doc. no. 25.  On April 5, 2013, the Court directed Respondent to answer Claims 1 and 2 in the petition.  Doc. no. 28.

II. Statement of Facts

The California Court of Appeal summarized the facts of this case as follows:

A. Uncharged June 26, 2009 Incident

On June 26, 2009, appellant Paul Samuel Johnson was arrested for a driving violation.  Sonoma County Sheriff's Deputies Michael Miller and Manuel Morataya were assigned to work in the Sonoma County jail that day.  After Johnson was moved to a dressing booth and a strip search was conducted, he asked Deputy Miller to retrieve some pictures of his child.  When Deputy Miller declined, Johnson became angry, raised his voice, and called the deputy a "mother fucker" several times. Johnson told a third deputy, "You ain't nothing, I'll do to you what I did to that punk C.O. [Correctional Officer] Romero."

Deputy Morataya overheard Johnson make numerous derogatory comments to the officers during the booking process, calling them "stupid," "pussies," and "assholes." Morataya later testified that Johnson also told the officers: "Fuck you, fuck off, you are nothing but assholes, you ain't nothing. I can't wait to see you on the street because you ain't nothing."

When Deputy Miller attempted to handcuff Johnson, he refused to turn around and continued to demand his pictures. After a third request, [FN1] Johnson complied. Once he was handcuffed, he was removed from the dressing booth and taken to a cell. Johnson had his hands fisted and assumed a stance that suggested that the arrestee was ready to fight during the incident.

> FN1 Deputy Morataya later testified that Deputy Miller made six requests before Johnson complied.

B. Charged July 10, 2009 Incident

Two weeks later, on July 10, 2009, Sonoma County Sheriff's Deputies Lynn Daley and Michael Miller were supervising Nurse Celia Soto while she delivered medication to jail inmates. After Nurse Soto gave Johnson an ear medication and some cotton, he became agitated and yelled that he needed more cotton. According to Nurse Soto, Johnson yelled: "Are you fucking stupid? . . . I have a history of ear infections and I'm going to get another fucking ear infection." Nurse Soto told Johnson that if he asked nicely next time she would give him more. Johnson continued to swear at Nurse Soto in a loud, angry tone. Deputy Daley told Johnson to be more respectful and advised him that he was going to write Johnson up for a rule violation. After the deputy began to walk away, Johnson called him back and said, "Go fuck yourself." Johnson became more agitated. Deputy Daley told Johnson that he was going to write Johnson up for being disrespectful to the staff and undermining his authority. Johnson yelled at Deputy Daley: "That's okay. I'll be getting out soon and I'll be at your house fucking up your family." Nurse Soto later testified that she heard Johnson tell the deputy: "I'll get you when I get out. I fucking know where you live and I'm going to fuck up your family."

C. Procedural History

On August 18, 2009, Johnson was charged by information with threatening a public officer in July 2009. The information alleged that he had three prior convictions that made him ineligible for probation and that he had served a prior

prison term.  At trial, evidence of the June and July 2009 incidents came before the jury.  Evidence of the June 2009 incident was not charged as a crime, but was admitted as other crimes evidence.  The July 2009 incident was the basis for the charge of threatening a public official.

Johnson testified at trial, stating that he was making fun of Deputy Daley during this incident.  He also denied making the statements attributed to him about Daley's family.  Deputy Daley testified that he was concerned about Johnson's threat against his family.  He wrote an incident report and informed his sergeant of this threat because of that concern.  Prompted by this incident, Deputy Daley had a security system installed at his home.  The jury also heard testimony from Deputy Morataya regarding the statements Johnson made during the June 2009 incident.  Deputy Miller testified about statements Johnson made during both incidents.  The jury found Johnson guilty of the charge and later found the prior prison term enhancement allegation to be true. . . .

Ex. 9 at 1-3.

LEGAL STANDARD

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Under the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, a district court may not grant habeas relief unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that

reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." <u>Id.</u> at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ.  <u>Id.</u> at 409.  Under AEDPA, the writ may be granted only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." <u>Harrington v. Richter</u>, 131 S. Ct. 770, 786 (2011).

If constitutional error is found, habeas relief is warranted only if the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" <u>Penry v. Johnson</u>, 532 U.S. 782, 795 (2001) (quoting <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 638 (1993)).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion of the highest court to analyze whether the state judgment was erroneous under the standard of § 2254(d). <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 801-06 (1991).  In the present case, the highest court to issue a reasoned decision on Petitioner's claims is the California Court of Appeal.

DISCUSSION

I. Admissibility of Uncharged Offense

Petitioner contends that the admission of the uncharged event violated his due process rights because it inflamed the jury against him and had no relationship to the charged offense.

A. Court of Appeal Opinion

The Court of Appeal denied this claim, as follows:

[E]vidence of uncharged crimes is admissible to prove certain specific facts including the intent to commit the charged crime. (§ 1101, subd. (b).) . . .

As substantial prejudice is inherent in the admission of this evidence, section 352 requires that uncharged offenses be admitted only if their probative value is substantial and not largely outweighed by the probability that the admission of this evidence would create a serious danger of undue prejudice, of confusing the issues, or of misleading the jury. (People v. Ewoldt, 7 Cal. 4th at 404-405.) . . .

Intent

Johnson argues that the evidence of the June 2009 incident was not admissible to prove his July 2009 intent because it lacked substantial probative value. Johnson's July 2009 intent was in dispute for two reasons. First, it was an element of the charged offense that the prosecutor was required to prove beyond a reasonable doubt. (Pen. Code, § 71.) Second, Johnson testified that some of his comments to Deputy Daley were intended as a joke rather than a serious threat.

An uncharged offense is admissible to prove intent for a charged offense if the defendant committed that offense with the same intent required for the charged offense. (People v. Ewolt, 7 Cal. 4th at 394, fn. 2.) The offense of threatening a peace officer requires an intent to cause the public officer to do, or refrain from doing, any act in the course of his or her duties. (Pen. Code, § 71.) The intent underlying the June 2009 incident must be sufficiently similar to that required for the charged incident to support the inference that Johnson probably harbored the same intent in each instance. (See People v. Ewoldt, 7 Cal. 4th at 402.)

In our view, the intent behind the June 2009 incident is sufficiently similar to that at issue at trial to establish Johnson's July 2009 intent.  Both instances involved the use of vulgar and threatening words to intimidate correctional officers in a jail setting.  Thus, the intent behind the June 2009 incident had substantial probative value to prove Johnson's intent during the July 2009 incident.

Section 352

Alternatively, Johnson contends that even if the June 2009 incident was admissible under section 1101, its probative value was substantially outweighed by its undue prejudice under section 352. . . . The prejudice that section 352 seeks to avoid is not that naturally flowing from relevant, highly probative evidence.  Instead, the statute attempts to avoid the prejudging of a case based on extraneous facts.  (People v. Zapien (1993) 4 Cal. 4th 929, 958; People v. Escobar (1996) 48 Cal. App. 4th 999, 1023.)  In this context, prejudicial evidence tends to evoke an emotional bias against the defendant as an individual based on evidence that has very little relevance to disputed trial issues.  (People v. Bolin (1998) 18 Cal. 4th 297, 320; People v. Yu (1983) 143 Cal. App. 3d 358, 377.)

Here, the trial court did not abuse its discretion in concluding that section 352 did not require exclusion of the uncharged act.  The June 2009 offense was less inflammatory than the evidence of the July 2009 offense.  The uncharged offense had substantial probative value to prove Johnson's intent to commit the charged offense.  That probative value was more substantial because the uncharged threat was made only two weeks before the charged offense and because the evidence of the two acts of offenses came from the testimony of multiple witnesses.  (See People v. Kipp (1998) 18 Cal. 4th 349, 371-372.)  Considering all of the circumstances, we are satisfied the trial court acted within its discretion in admitting the prior uncharged offense as evidence of intent.

Ex. 9 at 3-5.

B. Federal Authority

Federal habeas relief is unavailable for violations of state law or for alleged error in the interpretation or application of state law.  Swarthout v. Cooke, 131 S. Ct. 859, 861-62 (2011).  A state court's evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by

United States District Court
For the Northern District of California

infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process.  Pulley v. Harris, 465 U.S. 37, 41 (1984).  Due process is violated only if there are "no permissible inferences the jury may draw from the evidence." Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991). The Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (finding that trial court's admission of irrelevant pornographic materials was "fundamentally unfair" under Ninth Circuit precedent but not contrary to, or an unreasonable application of, clearly established federal law under § 2254(d)).

    C. Analysis

    The state appellate court determined that the uncharged incident was admissible under state law.  A state court's interpretation of state law binds a federal court in habeas corpus proceedings.  Bradshaw v. Richey, 546 U.S. 74, 76 (2005); Hicks v. Feiock, 485 U.S. 624, 629 (1988) (even a determination of state law made by an intermediate appellate court must be followed). Petitioner's claim that the admission of the evidence violated his right to due process is premised on his assertion that state law was improperly applied to his case.  However, this Court is bound to accept the Court of Appeal's determination that state law was properly applied in his case.  Petitioner's due process claim fails on this basis alone.

The claim also fails because the Court of Appeal's ruling was not contrary to or an unreasonable application of Supreme Court authority. See Holly, 568 F.3d at 1101 (no Supreme Court authority holds admission of prejudicial or irrelevant material constitutes due process violation). Where there is no Supreme Court authority on an issue, as in this case, the state court's ruling cannot be contrary to or an unreasonable application of Supreme Court authority. See Ponce v. Felker, 606 F.3d 596, 604 (9th Cir. 2010) (quoting Wright v. Van Patten, 552 U.S. 120, 126 (2008))("If Supreme Court cases 'give no clear answer to the question presented,' the state court's decision cannot be an unreasonable application of clearly established federal law.").

Finally, Petitioner has not shown that a specific constitutional guarantee was violated or that he was denied a fair trial. The evidence of the uncharged June 26 incident was relevant to the jury's determination whether Petitioner was joking when he made the remarks on July 10, 2009, because, in both instances, Petitioner's action showed the same intent, to threaten Sonoma County jail officers so as to interfere with the performance of their duties. Because the jury could have drawn the "permissible inference" that Petitioner acted with the same intent when he committed the charged offense as when he committed the uncharged action, his constitutional rights were not violated. See Jammal, 926 F.2d at 920; Estelle v. McGuire, 502 U.S. 62, 70 (1991) (admission of evidence that was relevant to show intent did not violate the Due Process Clause).

Furthermore, the evidence of the uncharged event was not so prejudicial as to deprive Petitioner of a fair trial. The

United States District Court
For the Northern District of California

uncharged event was particularly probative because it took place only two weeks before the charged offense and, as discussed above, it was relevant to the jury in determining the element of intent. Furthermore, the uncharged event would not tend to arouse the passions of the jury because it involved an incident that was less inflammatory than the charged offense.

For all these reasons, the Court of Appeal's denial of this claim was not objectively unreasonable.  Habeas relief on this ground is denied.

## II. Sufficient Evidence

Petitioner contends insufficient evidence supported his conviction.

A. Court of Appeal Opinion

The Court of Appeal denied this claim, as follows:

1. Standard of Review

. . . When assessing a claim of insufficiency of evidence, we review the whole record in the light most favorable to the judgment.  We determine whether the record discloses substantial evidence that is reasonable, credible, and of solid value such that a reasonable jury could find the defendant guilty beyond a reasonable doubt.  (People v. Elliot (2005) 37 Cal. 4th 453, 466. . . .

It is unlawful for a person to threaten a public officer to do, or refrain from doing, any act in the performance of his or her duties.  To be unlawful, the treatment [sic] must be directly communicated to the officer, must threaten to inflict an unlawful injury on a person or property, and must reasonably appear to the officer that the threat could be carried out.  (Pen. Code, § 71.)  A specific intent to influence an officer's performance of duty and an apparent ability to carry out the threat are necessary elements of this offense.  (In re Ernesto H. (2004) 125 Cal. App. 4th 298, 308; People v. Hopkins (1983) 149 Cal. App. 3d 36, 40-41.)

2. Intent to Interfere with Duties

Johnson contends there was insufficient evidence that he intended to influence the performance of Deputy Daley's duties by threatening him.  He characterizes his threat to Deputy Daley as an angry retort that did not violate Penal Code section 71.  Specifically, he argues that when he said— "[t]hat's okay"—he did so believing that he could not change Deputy Daley's decision to write him up.  He asserts that his testimony established that he had no intent to influence the officer's actions.

A threat intended as nothing more than an angry retort is insufficient to satisfy the intent requirement of the underlying statute.  (People v. Tuilaepa (1992) 4 Cal. 4th 569, 590.)  On appeal, Johnson asserts that his testimony shows that he made an angry retort [FN3] to Deputy Daley, not that he had any intent to harm his family. . . . On appeal, we must presume in support of the jury's verdict the existence of every fact that can be reasonably deduced from that evidence.  (People v. Smith, 37 Cal. 4th at 738-739; People v. Snow (2003) 30 Cal. 4th 43, 66.)  We may reverse a judgment for insufficiency of evidence only if it appears that under no hypothesis whatever is there substantial evidence to support the underlying conviction.  (People v. Bolin (1998) 18 Cal. 4th 297, 331.)

    FN3  This differs from Johnson's trial testimony that he was making fun of Deputy Daley during this incident.

In this matter, the jury heard evidence from which it could infer that Johnson engaged in a practice of threatening correctional officers when they did not comply with his demands.  The words that he directed at Deputy Daley and the circumstances under which they were uttered would allow a reasonable jury to infer that Johnson intended to prevent the officer from writing him up for a rule violation.  The jury also heard contrary evidence in the form of Johnson's testimony, which it apparently rejected that evidence as lacking credibility.  A determination of the credibility of witnesses is the exclusive province of the jury.  (People v. Barnes (1986) 42 Cal. 3d 284, 303-304.)  We have no power on appeal to substitute our assessment of a witness's credibility for that made by the jury.  (See People v. Pace (1994) 27 Cal. App. 4th 795, 798.)  We are satisfied that a rational juror could find that Johnson's statement was intended to prevent Deputy Daley from performing his duties.  (See, e.g., People v. Dunkle (2005) 36 Cal. 4th 861, 919.)

3. Reasonableness of Belief

Johnson also contends there was insufficient evidence of the reasonableness of Deputy Daley's belief that he would carry out his threats.  Although Daley's testimony indicates he actually took Johnson's threats seriously, Johnson argues that Daley's belief that he would actually carry out the threat was unreasonable.  We disagree.  The charged offense does not require a present ability to carry out the threat. (People v. Harris (2008) 43 Cal. 4th 1269, 1311.)  All that is required is that the victim perceives the threat as reasonably possible of being carried out.  (In re Marcus T. (2001) 89 Cal. App. 4th 468, 471-472; see In re Ricky T. (2001) 87 Cal. App. 4th 1132, 1139.)

Here, the future intent to harm the Daley family was explicit in Johnson's threat.  Johnson testified at trial, thus allowing the jury to observe his demeanor.  Apparently, the jury found other aspects of his testimony about his intent to lack credibility.  A reasonable jury could infer from all the circumstances that Deputy Daley reasonably believed the threats were serious.  When all the evidence is considered in the light most favorable to the judgment, we conclude the jury's verdict was supported by sufficient evidence.

Ex. 9 at 6-8 (footnote in original).

B. Federal Authority

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970).  A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt states a constitutional claim, which, if proven, entitles him to federal habeas relief.  Jackson v. Virginia, 443 U.S. 307, 321, 324 (1979).

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

evidence established guilt beyond a reasonable doubt.  Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992).  Nor does a federal habeas court in general question a jury's credibility determinations, which are entitled to near-total deference. Jackson, 443 U.S. at 326.  If confronted by a record that supports conflicting inferences, a federal habeas court "must presume -- even if it does not affirmatively appear in the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  Id.  The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  Payne, 982 F.2d at 338 (quoting Jackson, 443 U.S. at 319).  Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted. Jackson, 443 U.S. at 324.

To grant relief under the AEDPA, a federal habeas court must conclude that "the state court's determination that a rational jury could have found that there was sufficient evidence of guilt, i.e., that each required element was proven beyond a reasonable doubt, was objectively unreasonable."  Boyer v. Belleque, 659 F.3d 957, 965 (9th Cir. 2011); see also Coleman v. Johnson, 132 S. Ct. 2060, 2062 (2012) (per curiam) ("Jackson claims face a high bar in federal habeas proceedings . . .").

C. Analysis

Petitioner argues there was insufficient evidence to support Penal Code section 71's requirements that: (1) Petitioner had the intent to influence Deputy Daley's job performance; and (2) Deputy

Daley's belief that Petitioner would carry out the threat was reasonable.

### 1. Intent

To establish Petitioner's guilt under California Penal Code section 71, the prosecutor had to prove that Petitioner intended to influence Deputy Daley's job performance. People v. Hopkins, 149 Cal. App. 3d 26, 41 (1983). At the trial, Deputy Daley testified as follows. Petitioner was in his cell and was being attended to by Nurse Soto, who handed him medication and cotton balls for his ears. Reporter's Transcript (RT) at 445. Deputy Daley heard Petitioner respond rudely to Nurse Soto because he wanted her to give him more cotton balls. RT at 446. Deputy Daley told Petitioner that he would have to write him up for being rude and then he turned and started walking away from Petitioner's cell. Id. Petitioner called him back, and when Deputy Daley leaned forward toward Petitioner's cell so that he could hear him, Petitioner said, "Go fuck yourself." Id. Deputy Daley walked away again, and then Petitioner yelled, "That's okay. I'll be getting out soon and I'll be at your house fucking up your family." RT at 446-47. Petitioner became progressively more agitated as he kept talking. Id. Petitioner continued to yell as Deputy Daley walked away but Deputy Daley did not hear him say anything specific after he threatened Deputy Daley's family. Id. Deputy Daley did not know when Petitioner would be released from custody, but he interpreted Petitioner's words that he would be getting out "soon," to literally mean he would soon be released. RT at 447.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Nurse Soto testified that Petitioner cussed at her in a loud and angry tone of voice. RT at 471. She also testified that, after Deputy Daley told Petitioner he would write him up for disrespecting her, Petitioner said "Fuck you, Daley. And I'm going to fuck your wife and . . . " RT at 472. Nurse Soto was standing no more than two feet away from Petitioner's cell when he made that statement. Id. Nurse Soto also heard Petitioner say, "I'll get you when I get out. I fucking know where you live and I'm going to fuck up your family." Id. Nurse Soto testified that she was shocked by Petitioner's words because she "had never heard an inmate speak to an officer like that before, use those exact words." RT at 473-74.

Viewing this testimony in the light most favorable to the prosecution, a rational jury could have found that Petitioner made threats to Deputy Daley with the intent to prevent Deputy Daley from performing his duty of writing a disciplinary report about Petitioner's rude remarks to Nurse Soto.

Petitioner does not deny that he made these statements to Deputy Daley, but argues they were nothing but an angry retort or a joke, as he testified at his trial. However, the jury was instructed that, to find Petitioner guilty, it had to find that his remarks to Deputy Daley were a threat to inflict an unlawful injury and that Petitioner intended to influence Deputy Daley's performance of his job in making the threat. RT at 572 (jury instructions). The jury heard testimony from Petitioner, Deputy Daley and Nurse Soto. In finding Petitioner guilty, the jury necessarily found that Petitioner's remarks were not merely an angry retort or joke and resolved the credibility issue in favor

of Deputy Daley and Nurse Soto.  Under <u>Jackson</u>, if the record supports conflicting inferences, the Court must presume that the trier of fact resolved the conflict in favor of the prosecution. <u>See</u> <u>Jackson</u>, 443 U.S. at 326.  Furthermore, <u>Jackson</u> requires a federal habeas court to defer to the jury's credibility findings. <u>See</u> <u>id.</u>

For all the reasons stated above, the evidence, viewed in a light most favorable to the prosecution, supports the conclusion that a rational jury could have found that Petitioner had the intent required under California Penal Code section 71.

## 2. Deputy Daley's Reasonable Belief

Petitioner argues that Deputy Daley could not reasonably have believed that Petitioner could carry out any threat.  As mentioned by the Court of Appeal, Penal Code section 71 does not require a present ability to carry out the threat; all that is required is that Deputy Daley reasonably perceived the threat as possibly being carried out.  <u>See</u> <u>People v. Harris</u>, 43 Cal. 4th 1269, 1311 (2008) (section 71 does not require defendant to have capability to inflict the threatened injury immediately; it is sufficient if defendant made threat with requisite intent and it reasonably appeared to the recipient that the threat could be carried out).

Defendant Daley testified as follows:

Q: When you heard that statement about your family, what was your reaction?

A: I was concerned.  I mean, he had gotten so upset over something as simple as cotton and then further upset with a warning, I thought that if I really did something to him he was going to continue to progress and could possibly show up at my home.

United States District Court
For the Northern District of California

Q: When you say do something to him, what are you talking about?

A: Well, write up a report so he would have lost some type of privilege, time in the day room, commissary, candy bars or something and would have been negative.  It would have prolonged his time in the administrative segregation.

Q: You still went ahead and wrote up an incident report; is that right?

A: Yes.  Because of what he had said, I——and because I did believe he would follow through with it, I informed the sergeant right away and, you know, yeah, I did complete a report.

. . .

Q: What steps, if any, did you take with regard to your feelings?

A: Well, I wrote the report initially.  That was the first step in what I felt protecting myself.  I informed my wife. . . .  And then we discussed it and felt that we probably should put in a security system.

Q: Did you take any steps——did you and/or your wife take steps to get the security system?

A: I initially did——wanted to make sure we got the right one, so I did some research as far as looking online to get the best deal. . . . We had finally settled on ADT, and then my wife said she would go ahead and make the arrangements and get it installed.

Q: And did that, in fact, happen?

A: Yes.

Q: Is that security system in place now?

A: Yes.

Q: Do you remember the approximate date of when you had it installed?

A: I don't.  I was at work, so I can't recall exactly.

Q: Who paid for this?

A: I did.

Q: How much did you pay?

A: It was about a hundred dollars for the installation and then about forty dollars a month out of pocket.

Q: Had there been any talk with your wife beforehand about getting a security system anyway?

A: No.

Q: Was there any other reason than what the defendant said that prompted you to get the security system?

A: No.

RT at 448-51.

On cross-examination, Deputy Daley admitted that he had not installed the security system until the day after Petitioner's preliminary hearing, which took place approximately one month after Petitioner threatened him.  RT at 460-61.  Deputy Daley also admitted that the security system had not been installed at his house on the date he sent an email to the district attorney indicating that the security system had been installed.  RT at 459.  On redirect questioning, Deputy Daley testified that he had sent the email without checking with his wife, who was in charge of getting the security system installed, and he thought she had already arranged for its installation.  RT at 463.  Deputy Daley also testified that his reason for installing the system was not because of what he learned at Petitioner's preliminary hearing or to enhance the People's case against Petitioner.  RT at 464.

Taking this evidence in the light most favorable to the prosecutor, a rational jury could have concluded that Deputy Daley had a reasonable belief that Petitioner would carry out his threats.

United States District Court
For the Northern District of California

Petitioner argues that Deputy Daley's testimony was not credible because he lied to the prosecutor about when he bought the home security system and because he waited until the day after Petitioner's preliminary hearing to buy it.  Although defense counsel impeached Deputy Daley about his false statement in his email to the prosecutor, the jury nonetheless believed Deputy Daley's testimony regarding Petitioner's belligerent manner and threatening words and concluded that, even if he had not immediately bought the alarm system, it was reasonable for him to have thought Petitioner could carry out his threat.  On federal habeas review, the court must defer to the jury's credibility determinations.  See Jackson, 443 U.S. at 326; Payne, 982 F.2d at 338.  Therefore, Petitioner's argument about Deputy Daley's credibility does not establish that insufficient evidence supported the jury's finding that Deputy Daley had a reasonable belief that Petitioner could carry out his threats.

Citing his trial court motion to dismiss the indictment under California Penal Code section 995,[2] Petitioner argues that California Penal Code section 17 requires that he, as a prisoner, had to have a release date from prison in order to be found guilty under this statute.  He concludes that, because he did not have a release date, he cannot be guilty of this offense.  CT 36-39.

In Petitioner's section 995 motion, defense counsel argued that section 71's requirement that Petitioner have the "apparent

---

[2] California Penal Code section 995 allows a defendant to file a motion to set aside the criminal indictment or information if, at a preliminary hearing, the prosecutor does not establish probable cause that the defendant committed the charged offense.  Perry v. Superior Court, 57 Cal. 2d 276, 283 (1962).

United States District Court
For the Northern District of California

ability to carry out the threat" was not met at Petitioner's probable cause hearing because the court did not allow Deputy Daley to answer defense counsel's question, "Isn't it true that Petitioner was not going to be released in a few weeks?"  CT at 39.  Defense counsel argued that, if Deputy Daley had answered that question, he would have testified that Petitioner was not going to be released any time soon, and this would have shown Petitioner did not have the ability to carry out the threat.  Id.  The trial court denied this motion, as follows:

> [T]he motion should be denied.  It's clear to me that Judge Antolini did assume for purposes of argument that Mr. Johnson did not, in fact, have a release date.  The correctional officer testified that the correctional officer was unaware of any release date, whether Mr. Johnson had one or not.  And so, the Court assumed that Mr. Johnson did not have a release date for the sake of the argument.  But there is no indication that Mr. Johnson is serving——committed to serve an unparolable life term, which would make the threat arguably impossible of execution.  Instead, Mr. Johnson was in custody on a misdemeanor with a maximum term of confinement of one year, and he was on a parole violation, which also has a limited term of confinement.
>
> So, Mr. Johnson, in fact, had a release date from the records that are available to the Court.  And therefore, the Court does deny the 995 motion.

RT at 34-35.

Petitioner's argument about a release date is meritless.  First, there is no requirement in the statute that Petitioner had to have a known release date at the time he threatened Deputy Daley.  Second, as explained by the trial court, even if Petitioner did not have a specific release date at the time he made the threats to Deputy Daley, he was in jail only for a misdemeanor and parole violation, both of which require short terms of imprisonment.  That Petitioner would serve short

sentences was equivalent to having a specific release date, because he soon would be capable of carrying out the threat.

In summary, taking all the evidence in the light most favorable to the prosecution, the state court's determination that a rational jury could have found that each required element of Penal Code section 71 was proven beyond a reasonable doubt was not objectively unreasonable.  Habeas relief on this claim is denied.

III. Evidentiary Hearing

Petitioner files a separate motion for an evidentiary hearing.  However, he does not indicate what evidence he would present.

As discussed above, Petitioner has failed to state a claim for habeas relief.  Accordingly, Petitioner's request for an evidentiary hearing on any ground is denied.  See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (no hearing required if allegations, viewed against the record, fail to state a claim for relief).

IV. Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability in the ruling. Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254.

A petitioner may not appeal a final order in a federal habeas corpus proceeding without first obtaining a certificate of appealability.  28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).  A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a

*United States District Court*
*For the Northern District of California*

constitutional right."  28 U.S.C. § 2253(c)(2).  The certificate must indicate which issues satisfy this standard.  28 U.S.C. § 2253(c)(3).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).

The Court finds that reasonable jurists would not find its ruling on any of Petitioner's claims debatable or wrong. Therefore, a certificate of appealability is denied.

Petitioner may not appeal the denial of a certificate of appealability in this Court but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure.  See Rule 11(a) of the Rules Governing Section 2254 Cases.

CONCLUSION

Based on the foregoing, the Court orders as follows:

1. The petition for a writ of habeas corpus is denied.

2. The request for an evidentiary hearing is denied.  Doc. no. 54.

3. The Clerk of the Court shall enter a separate judgment, terminate all pending motions and close the file.

4. A certificate of appealability is denied.

IT IS SO ORDERED.

Dated: 8/1/2014

CLAUDIA WILKEN
UNITED STATES DISTRICT JUDGE

22